**James AVERITT, Plaintiff-Appellant,**

**v.**

**Honorable William G. CLOON, Jr., Circuit Judge, both in his official capacity and individual capacity, County of Gogebic and Gogebic County Board of Commissioners, as said Board was constituted at the time of this cause of action and as it presently exists, both in their official capacities and individual capacities, consisting of Oreste Chiantello, Richard Sofio, Samuel Sorenson, Leo Stanczak, Stephen Thomas, Carl Anderson and Peter Napel, Defendants-Appellees.**

**No. 85–1430.**

United States Court of Appeals, Sixth Circuit.

Argued April 7, 1986.

Decided July 22, 1986.

Rehearing Denied Aug. 26, 1986.

John P. Murphy (argued), Humphrey & Murphy, Ironwood, Mich., for plaintiff-appellant.

Merry A. Rosenberg, Asst. Atty. Gen. (argued), Lansing, Mich., Walter L. Hansen, Clancey, Hansen, Chilman, Graybill, & Greenlee, P.C., Ishpeming, Mich., for defendants-appellees.

Before KRUPANSKY and GUY, Circuit Judges: and HOLSCHUH, District Judge.*

KRUPANSKY, Circuit Judge.

Plaintiff-appellant James Averitt ("plaintiff") initiated this action which charged the defendants with constitutional infringements and violation of his civil rights arising pursuant to 42 U.S.C. §§ 1983, 1985, 1986, and 2000e–1 *et seq.* Federal jurisdiction was predicated upon 28 U.S.C. §§ 1331 and 1343.

Plaintiff had been a police officer for the City of Ironwood, Michigan from June, 1976 through April 1979, at which time he was laid-off for economic reasons. On January 23, 1981, the plaintiff entered pleas of guilty to unlawfully driving away an auto-

---

* Hon. John D. Holschuh, United States District Judge for the Southern District of Ohio, sitting by designation.

mobile pursuant to Michigan Compiled Laws ("MCLA") § 750.413, a felony, and two misdemeanors charging malicious destruction of property in violation of MCLA §§ 750.387 and 750.377a.

The plaintiff's claims herein implicate MCLA § 552.251, which Michigan statute authorized an appointive position styled "friend of the court", the responsibilities of which position are "... enforcing payment of all delinquent payments duly ordered and decreed by said circuit courts for the support, maintenance and education of dependent minor children, in causes pending or where parents have been divorced, where said dependent minor children for any reason are not receiving proper care, maintenance and education and are liable to become a public charge and are not properly cared for by their custodian ..." [1] Appointment to the position was vested in the Governor of the State of Michigan upon recommendation of the circuit judge or judges of the respective counties in the State of Michigan.

On November 30, 1981, the Honorable Donald L. Munro ("Munro"), Judge of Gogebic Circuit County Court (the "Gogebic Court") temporarily employed the plaintiff to perform the duties defined in MCLA § 552.251 pending a gubernatorial appointment of a "friend of the court" for the Gogebic Court. It is conceded by the plaintiff that his temporary employment was "at the will" of Munro who characterized the plaintiff's position as "acting friend of the court." It is significant to note that the plaintiff was never formally appointed to or served in the official position of "friend of the court" of the Gogebic Court although Munro recommended his appointment to the position. The plaintiff's appointment to the statutory position of "friend of the court" was disfavored by the public generally and opposed by the Gogebic County Board of Commissioners because of his notoriously controversial public image which resulted in unfavorable action by the Honorable William G. Milliken, the former Governor of the State of Michigan, who rejected Munro's recommendation and refused to appoint the plaintiff to the position. However, Munro permitted the plaintiff to continue to perform his assigned duties.

In October of 1982, the Honorable William G. Cloon, Jr. ("Cloon"), who replaced Munro as the Circuit Judge for Gogebic County, resubmitted the plaintiff's recommendation for appointment to the vacant

---

**1. 552.251 Friend of court; appointment, duties, legal assistance, removal**

Sec. 1. It shall be the duty of the circuit judge or circuit judges of the respective counties in the state of Michigan, to recommend a duly qualified and licensed attorney, as a "Friend of the Court" who shall be appointed by the governor, each of whom shall act as such "Friend of the Court" in the judicial circuit in which he shall have been appointed for the purpose of enforcing payment of all delinquent payments duly ordered and decreed by said circuit courts for the support, maintenance and education of dependent minor children, in causes pending or where parents have been divorced, where said dependent minor children for any reason are not receiving proper care, maintenance and education and are liable to become a public charge and are not properly cared for by their custodian: Provided, That such "Friend of the Court" need not be a duly qualified and licensed attorney, but may be any person competent for such work, and may be the same person, who is probation officer or assistant probation officer in such counties: and provided further, That if such "Friend of the Court" is not a duly qualified and licensed attorney, the circuit judge of such county may appoint any duly qualified and licensed attorney to assist such "Friend of the Court" when such circuit judge shall deem legal assistance necessary, and such attorney so appointed shall be paid such sum or sums as the circuit judge shall fix and determine as reasonable for the services performed, from the general fund of such counties by the county treasurer thereof upon orders drawn by the county clerk subject to the proper audit by the board of supervisors or board of county auditors. The governor shall have power to remove such officer for incompetency, misconduct or failure to carry out the orders of the court, or neglect of any duty imposed by the court. Such removal may be made upon the certification of the judge or judges of the court under whom such "Friend of the Court" acts, which certificate shall set forth that a full hearing has been had before said judge or judges and as a result thereof, the court has determined that such "Friend of the Court" is incompetent or has been guilty of misconduct, neglect of duty, or refusal to carry out the order of the court.

position to the Honorable James J. Blanchard, the current Governor of the state of Michigan. On April 20, 1983, Governor Blanchard also rejected the plaintiff's appointment to the position. The plaintiff continued to perform the duties of his employment until June 17, 1983 at which time he was terminated by defendant Cloon. Thereafter the plaintiff commenced this action in the United States District Court for the Western District of Michigan with the filing of a four-count complaint wherein he alleged, *inter alia,* violation of his civil rights, wrongful discharge, and tortious interferences with an employment contract.

In considering the plaintiff's charges asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.,* the trial court noted that the plaintiff failed to allege that he had been discriminated against because of "race, color, religion, sex, or national origin." The trial court recognized that Title VII was not designed nor intended to protect convicted felons. Consequently, the plaintiff's Title VII claims were dismissed. This court, upon review, concurs in the district court's disposition of plaintiff's Title VII claim.

■ Confronting the plaintiff's charges anchored in 42 U.S.C. §§ 1985 and 1986, the trial court observed that the plaintiff did not come within those classes of insular minorities that were intended to receive special protection under the Equal Protection Clause of the Constitution because of inherent personal characteristics, and those who join together as a class for the purpose of asserting certain fundamental rights. *See Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir.1980). The court went on to state that § 1985 was directed against those who conspired to interfere with an individual's civil rights. Sections 1985(3) and 1986 required a plaintiff to allege that the conspirators identified therein possess a racial or otherwise class-based invidious discriminatory animus to invoke the protection of the enactment. *See United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983). In sum, the trial court concluded that the plaintiff's allegations that his discharge from employ-

ment was predicated upon his prior criminal conviction in violation of his constitutional rights and 42 U.S.C. §§ 1985 and 1986 failed to state a cause of action and were therefore insufficient to invoke federal jurisdiction. The plaintiff's claim based on those asserted violations was therefore dismissed. This court endorses the trial court's disposition of the §§ 1985 and 1986 claims.

The plaintiff also asserted infringements of his Fifth, Eighth, and Fourteenth Amendment rights arising pursuant to the United States Constitution in violation of 42 U.S.C. § 1983. In considering the plaintiff's allegations that he was terminated from his employment in violation of his Eighth Amendment protection against cruel and unusual punishment, the trial court concluded that the assertions were, as a matter of law, without merit. *See Ingraham v. Wright,* 430 U.S. 651, 670, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). This court's review of the record prompts it to approve the trial court's disposition of that charge for the reasons articulated in the district court's opinion.

The plaintiff's claim of cruel and unusual punishment as an abridgement of his Fifth Amendment protection against double jeopardy is deficient on its face and was properly dismissed by the district court.

■ In addressing the plaintiff's § 1983 claim, this court's attention is directed to *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487 (1985), wherein the Supreme Court mandated that in cases alleging the deprivation of a property interest without due process of law, where the property interest is employment, a pretermination hearing is constitutionally required:

We have described "the root requirement" of the Due Process Clause as being "that an individual be given an opportunity for a hearing *before* he is deprived of any significant property interest." This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment.

105 S.Ct. at 1493 (citations omitted). Accordingly, the plaintiff's § 1983 federal constitutional claim depended on the existence of a property right in his continued employment by the Gogebic Court. If the plaintiff had a constitutionally protected property right in continued employment by the Gogebic Court he could not be deprived of that property right without due process in the form of a pretermination hearing. *Id.* at 1491.

The Supreme Court has stated that property interests are not created by the Constitution; "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Bd. of Regents v. Roth,* 408 U.S. 564, 576, 92 S.Ct. 2701, 2708, 33 L.Ed.2d 548 (1972). Here, as the independent source of his property interest, the plaintiff has advanced a claim which, while not identified as such, was apparently evolved from the pronouncements of *Toussaint v. Blue Cross,* 408 Mich. 578, 292 N.W.2d 880 (1980). In *Toussaint,* the Michigan Supreme Court concluded that a provision of an employment contract which provided that an employee could not be discharged except for cause was legally enforceable even though the contract was for an indefinite period of time, and under circumstances where the provision became part of the employment contract either by express oral or written agreement, or as a result of an employee's legitimate expectations arising as a result of an employer's policy statements. 408 Mich. at 598. In the case at bar, the plaintiff advanced his *Toussaint*-type claim as a source of state law that elevated his at-will employment to a constitutionally protected property interest of which he could not be deprived without a due process pretermination hearing.

The plaintiff's argument that he was deprived of a property interest without due process of law is misplaced. Initially, it should be noted that the Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits. *Roth,* 408 U.S.

at 576, 92 S.Ct. at 2708. Mindful of the plaintiff's concession that he never was formally appointed to or served in the statutory position of "friend of the court" pursuant to MCLA § 552.251, it is apparent that he does not come within the above bright line dictate of *Roth.* Accordingly, if he is to prevail, the plaintiff must prove that his Fourteenth Amendment protected property interest resulted from an independent source of state law, in this case his subjective, albeit reasonable, expectation of continued employment by the Gogebic Court, given effect by *Toussaint.* More specifically, the plaintiff insisted that his property right in continued employment resulted from Cloon's promise to appoint him to the statutory position of "friend of the court" on or immediately subsequent to July 1, 1983, the effective date of MCLA § 552.501, which repealed § 552.251 and invested the circuit judge or judges of the respective counties of Michigan with the exclusive authority to appoint applicants to the position of "friend of the court" without gubernatorial approval. Stated differently, the gravamen of the plaintiff's complaint was the failure of Cloon to appoint him to the statutory position of "friend of the court" when he, Cloon, became authorized to do so on July 1, 1983. The plaintiff, in essence, urges this court on appeal to extend the *Toussaint* rationale to include the failure of an elected public official to implement his promise to make a political appointment.

■ The pronouncements of the Supreme Court in *Roth* teach that a person must clearly have more than an abstract need or desire for the property interest in controversy to bring it within the protection of procedural due process. The individual must have more than a unilateral expectation of a property interest, whatever its character. He must have a legitimate claim of entitlement to the claimed property interest to bring it within the procedural protection of the Constitution. The Michigan Supreme Court in *Toussaint* never suggested, by implication or otherwise, that its pronouncements in that decision extended to promises by elected public officials to make future political appoint-

ments.[2] Accepting the plaintiff's allegations that Cloon promised to appoint him to the position of "friend of the court" of Gogebic Court after July 1, 1983 as true, this court nevertheless declines to extend the *Toussaint* doctrine to elected public officials in the exercise of their authority to make future political appointments as suggested by the plaintiff herein. Thus, this court concludes that the plaintiff was not deprived of a constitutionally protected property interest and his § 1983 claim must fail. In light of this disposition, it is unnecessary for this court to review the trial court's reasons supporting its disposition of the issue.

█ Plaintiff's allegation that he was deprived of a liberty interest without due process is equally misplaced. In *Bd. of Regents v. Roth, supra,* the Supreme Court recognized that although the nonretention of an untenured college teacher could make him somewhat less attractive to other employers, it would "stretch the concept too far to suggest that a person is deprived of a 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." 408 U.S. at 575, 92 S.Ct. at 2708. In a subsequent case, the Court declared that "[t]his same conclusion applies to the discharge of a public employee whose position is terminable at the will of the employer *when there is no public disclosure of the reasons for the discharge.*" *Bishop v. Wood,* 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976) (emphasis added). In *Bishop,* the court emphasized that since the *reasons* for the petitioner's discharge were not made public, the discharge could not "properly form the basis for a claim that petitioner's interest in his 'good name, reputation, honor, or integrity' was thereby impaired." *Id.* In alleging a properly pleaded cause of action charging a deprivation of a liberty interest, a public employee plaintiff must affirmatively assert that: (1) there was a public disclosure

of the reasons underlying his discharge, and (2) such public disclosure endangered his good name, reputation, honor, or integrity. *Id.*

In the case at bar, the plaintiff's second amended complaint alleged only that the defendants' actions caused him insult and disgrace. The plaintiff has conceded that he failed to plead the requisite elements in his second amended complaint. Inasmuch as the plaintiff's complaint failed to allege the necessary elements to form the basis for a claim of deprivation of a liberty interest protected by the due process clause, such claim was insufficient to invoke federal jurisdiction. Accordingly, the district court's disposition of the issue was not improper.

For the reasons herein stated, the decision of the district court is hereby AFFIRMED.

---

2. It is not clear from the decision in *Toussaint* whether a public employee has standing to assert a claim for relief under the decision in that case. *Ottowa County v. Jaklinski,* 423 Mich. 1, 28 n. 14 (1985). It should be noted that the plaintiff's complaint herein incorporated a pen-

dent state claim for wrongful discharge based on *Toussaint* which with other state claims were dismissed by the district court when it dismissed the plaintiff's federal claims. Needless to say, the plaintiff is free to pursue those *Toussaint* claims in state court.