9 F.3d 107
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Marthalene EVANS, Plaintiff-Appellant,
v.
COUNTY OF SUMMIT; and Tim Davis, Defendants-Appellees.
 No. 92-3658.
 United States Court of Appeals, Sixth Circuit.
 Aug. 31, 1993.
 
 Before: MARTIN and SILER, Circuit Judges, and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Marthalene Evans, who sued defendants County of Summit (Ohio) and County Executive Tim Davis under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Sec. 2000-2 et seq., and 42 U.S.C. Sec. 1983 for alleged sexual discrimination in public hiring, appeals a bench judgment in favor of defendants. For reasons stated hereafter, we AFFIRM.
 
 Background
 
 2
 In early 1989, Summit County, which operates under the leadership of a County Executive, received a state grant to develop a Home Weatherization Assistance Program. This program featured various staff positions to be filled by the County Executive, defendant Davis. One of these jobs was "Field Supervisor," as the name describes, an oversight position. Following the county's advertisement of the available position, plaintiff Evans and various other persons not then employed by the county (collectively "external applicants") applied for that post. Eventually, Pat Carano, who already was a county employee (Assistant Poundkeeper), got the job. The events leading to Carano's selection and Evans's non-selection form the basis for this lawsuit. Evans sued the county and Davis (eventually in only his official capacity) under Title VII and Sec. 1983, claiming that she was qualified for the job and did not get it because of her gender. The defendants asserted a valid hiring basis completely unrelated to gender. The district court held for defendants after a bench trial.
 
 
 3
 In a thorough factual study, the district court determined that no sexual discrimination occurred. It applied the McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), scheme for analyzing a gender discrimination claim[1] and held that although Evans had established a prima facie case, defendants clearly had articulated a legitimate nondiscriminatory hiring basis. Because plaintiff utterly failed to demonstrate pretextuality in defendants' articulation, Evans's Title VII claim failed. The absence of discrimination doomed any equal protection argument under Sec. 1983. No due process ground existed because Evans had not shown a cognizable property or liberty interest of which she was deprived by defendants.
 
 
 4
 The district court based its analysis of the case on the following facts, which it found through assessment of evidence presented at trial:
 
 
 5
 Defendant Davis, the County Executive ultimately vested with hiring power, selected Carano as Field Supervisor based on a consistent county policy of, where possible, promoting existing county employees to supervisory positions. Because, in the view of Davis and then county Director of Administration Ellen Galmitz,[2] Carano possessed qualifications for the job,[3] he was promoted from within county employment to the position of Field Supervisor. Further, Carano was not compared to the external applicants and then hired; rather, Davis hired Carano without even considering the external applicants, in effectuation of the county policy of internal employee advancement.
 
 
 6
 The displeasure leading to this suit arose from lack of communication within the county's government. At the same time Davis was pursuing, interviewing, and hiring Carano, Steve Jackson, a county administrative underling, was coordinating a more formal employee search for the same position. Jackson had advertised for the Field Supervisor slot, received and screened applications, and transmitted his top four external applicants (which included Evans) to Galmitz. Later, in ignorance of the fact that Davis had hired Carano, Jackson continued to cultivate Evans as a prospective Field Supervisor. He gauged Evans's continued interest in the job and phoned her references, finding her well-qualified. Jackson's activities strongly suggested to Evans that she was about to be hired. As noted, however, unbeknownst to Jackson, Davis had hired Carano well before most of Jackson's interactions with or inquiries about Evans.[4]
 
 
 7
 Thus the district court found that Carano had gotten the position due to a consistent, nondiscriminatory county policy of promotion from within. Those persons involved in the "formal" application process conducted by Jackson really never had a chance and were really never considered by Davis, the individual with hiring power. Though the district court commiserated with Evans, it found absolutely no credible evidence of gender bias, thus mandating judgment for defendants. Evans appeals both the Title VII and Sec. 1983 dispositions.
 
 Discussion
 
 8
 In challenging the district court's decision, Evans must overcome a deferential review standard. Because the district court acted as the trier of fact in this case, its findings are reviewed only for clear error. See Fed.R.Civ.P. 52(a) (providing clear error review standard and stressing importance of deference for credibility determinations); Rabidue v. Osceola Ref. Co., 805 F.2d 611, 615-16 (6th Cir.1986) (defining standard), cert. denied, 481 U.S. 1041 (1987).
 
 
 9
 Evans claims, with respect to the Title VII ruling, that the district court clearly erred in two ways. First, she argues that the court reached conflicting conclusions as to Carano's qualifications, resulting in a clearly erroneous decision. Though it is unclear how Evans's argument, even if accurate, would impact the outcome of this case, her theory is based on a misperception (or mischaracterization) of the district court's findings. Evans claims that the court determined that the Field Supervisor had to meet certain qualifications and that Carano did not meet those qualifications. This is wrong for two reasons. First, the court held that Davis and Galmitz applied separate qualifications from those named administratively in hiring Carano, i.e., they focused on Carano's background in social services rather than on his construction record. Second, and most importantly, the district court expressly held that even if the administrative criteria applied, Carano was qualified: "Although Mr. Carano lacked any significant construction experience, it is this court's opinion that his background provided a sufficient 'combination of training and/or experience' to qualify him for the job." Evans's claim premised on inconsistent factual findings thus is unpersuasive because it is based on erroneous information.
 
 
 10
 Evans also maintains that the court erred in refusing to find the county's articulated legitimate hiring reason pretextual. However, Evans presents no evidentiary discussion in attack of the court's finding, just as she presented no evidence at trial to discredit the county's defense.[5] Rather, Evans merely digests numerous Title VII cases on points of law irrelevant to the issue at hand. Even if Evans were to make a factual argument, it would be fruitless. The district court relied on consistent testimony from various county witnesses in finding a normal promotion from within policy. Additionally, the court made reasonable credibility determinations in finding that the county, through Davis, applied that policy in the hiring of Carano. Evans simply provided nothing credible to contradict the voluminous evidence supporting the county's articulation. Though it was unfortunate that Jackson, operating without knowledge of his superior's hiring actions, raised Evans's hopes for employment, nothing suggests that Davis acted discriminatorily.[6] Applying the requisite review standard, it is clear that the court correctly found for defendants on the Title VII claim.
 
 
 11
 The same conclusion applies to the Sec. 1983 resolution. Finding no legal basis to support Evans's constitutional claims, the district court summarily rejected any recovery under Sec. 1983. As for equal protection, the court found that the absence of gender discrimination in the county's hiring decision foreclosed any valid theory. No due process ground existed because Evans could cite no existing liberty or property interest deprived by the county's hiring decision.
 
 
 12
 As with Evans's Title VII discussion, she here presents no real argument to impeach the district court's reasoning. Rather, Evans offers a collection of constitutional principles largely unrelated to the question at hand.
 
 
 13
 Undoubtedly, intentional discrimination is required to support an equal protection claim in this context. See Boger v. Wayne County, 950 F.2d 316, 324-25 (6th Cir.1991) (noting that intentional discrimination is required to support Sec. 1983 equal protection claim against public employer). Because no such discrimination existed, the district court correctly rejected equal protection as a valid ground for relief.
 
 
 14
 Evans's due process claim is little more complex. The issue is whether, without more, an unsuccessful applicant for government employment has been denied a liberty or property interest. As the district court properly held, no authority supports an affirmative answer. A property interest in public employment exists only when a hiring situation presents "a legitimate claim of entitlement to the claimed ... interest." Averitt v. Cloon, 796 F.2d 195, 199 (6th Cir.1986). Evans, as one of many applicants, can claim no legitimate entitlement to receiving the position of Field Supervisor and thus no property interest. A liberty interest, in this context, arises when future employment might be negatively impacted by the stigma of a given personnel decision. See id. at 200; Parate v. Isibor, 868 F.2d 821, 831-32 (6th Cir.1989). Here, nothing in Evans's non-selection will deter or even affect her pursuit of subsequent chosen employment. The district court correctly ruled that no legal basis supported Evans's Sec. 1983 claims.
 
 
 15
 ci Conclusion
 
 
 16
 For the foregoing reasons, the district court is AFFIRMED.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Evans does not contest the applicability of McDonnell Douglas or the court's elemental approach
 
 
 [2]
 Galmitz, who no longer works for the county, had input to the decision because her position had supervisory authority over the Home Weatherization Assistance Program
 
 
 [3]
 The qualifications Galmitz and Davis used did differ from those advertised as required for Field Supervisor applicants. The administrative description cited the need for housing construction and supervisory experience. Davis and Galmitz, who knew that the Field Supervisor would receive technical training on the job, focused more on social/managerial skills and experience with underprivileged persons. Apparently, the Field Supervisor would work significantly with the underprivileged, making prior interactive experience desirable
 
 
 [4]
 When Evans discovered that Carano, a former county dogkeeper, had been hired, she sensed discrimination. This led Evans to try, sometimes surreptitiously, to gather incriminating evidence against the county. For example, Evans secretly taped conversations between herself and Galmitz and Jackson. Additionally, another program employee, Paul Suso, cooperated with Evans in her investigation. Suso leaked information to Evans regarding Carano's qualifications and hiring, apparently to show Evans that a less-qualified male had gotten the spot for which she applied
 
 
 [5]
 Evans makes some factual arguments in the beginning of her brief without ever using them as a basis for exposing clear error at trial. In those arguments, Evans attempts to show that the county compared her with Carano before hiring the male. This, Evans suggests, would nullify the county's promotion from within defense. She cites alleged statements made by the county in a state investigation indicating that the county considered Evans but found Carano "more qualified," and other evidence showing Evans's participation in the job search. Certainly, in some sense, Evans was considered. The problem is that she was considered only by Jackson, who had no authority to hire. The person with power, Davis, apparently never knew of or considered Evans for the Field Supervisor job
 
 
 [6]
 Notably, the district court highlighted two pieces of evidence injurious to Evans's position. First, Evans was not the most qualified external applicant for the job. Another applicant not selected--a male--had prior experience in another home weatherization program. Thus, a male more qualified than Evans had also been rejected. Additionally, Davis had a strong record of employing people without regard to gender. Indeed, the district court noted that three of five county "cabinet" (i.e., supervisory) employees were women