Terry F. BROWDER et al., Plaintiffs–Appellants,

v.

Ronald D. TIPTON et al., Defendants–Appellees.

No. 78–1250.

United States Court of Appeals, Sixth Circuit.

Argued April 4, 1980.

Decided Sept. 30, 1980.

Michael Miller, Malcolm L. McCune, Gracey, Maddin, Cowan & Bird, Nashville, Tenn., for plaintiffs–appellants.

Francis I. Breazeale, Chattanooga, Tenn., for defendant–appellees.

Before WEICK, MERRITT and MARTIN, Circuit Judges.

MERRITT, Circuit Judge.

The question on appeal is whether causing the false arrest of an adversary in a labor dispute violates the provisions of the Anti–Ku Klux Klan Act of 1871, 42 U.S.C. § 1985(3). That law makes it a federal tort for a private group to "conspire or go in disguise on the highway or on the premises

of another for the purpose of depriving . . . any . . . class of persons of *the equal protection* of the laws, or of *equal privileges and immunities under the laws*" (emphasis added). We hold that the class of individuals protected by the "equal protection of the laws" language of the statute are those so–called "discrete and insular" minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics. The persons protected under the "equal privileges and immunities" language of the statute are those individuals who join together as a class for the purpose of asserting certain fundamental rights. These classes do not include picket line crossers who are falsely arrested.

## I.

Plaintiffs Jerry Browder and Donald Shelton are employees of a freight line company. On June 24, 1977, they were assigned to deliver fuel to a Cities Service installation in Ducktown, Tennessee. At the same time, defendants–four Ducktown plant employees and their Union–were engaged in a labor dispute with Cities Service and were picketing the Ducktown installation. As plaintiffs approached the Duck-town picket line, an altercation developed between plaintiffs and defendant Tipton. After the altercation, the individual defendants appeared before a Polk County magistrate and caused plaintiffs to be arrested by making false accusations that they had committed serious felonies.

Plaintiffs filed a civil rights suit in federal court based on several legal theories, all of which the District Judge dismissed. Plaintiffs now appeal, advancing claims under §§ 1985(3) [1] and 1986.[2]

We agree that plaintiffs have not stated a claim under either § 1985(3) or § 1986. Three factors lead us to this conclusion: the Supreme Court's reasoning in *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); § 1985(3)'s textual similarity to the Equal Protection Clause; and remarks on the floor by Senator Edmunds, the Senate manager of the Civil Rights Act of 1871, 17 Stat. 13, § 2, the parent of § 1985(3).

## II.

In *Griffin v. Breckenridge*, the Supreme Court, without defining the scope of the statute, held that § 1985(3) creates a cause of action in tort for certain kinds of private

1. Depriving persons of rights or privileges

If two or more persons in any State or Territory conspire to go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. § 1985(3) (1976).

2. Same; action for neglect to prevent

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 in this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action. 42 U.S.C. § 1986 (1976).

discrimination. The Court said that to state a cause of action under § 1985(3), a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States." 403 U.S. at 102–03, 91 S.Ct. at 1798.

We are concerned here with the second requirement, which the Court described as follows:

> The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class–based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all. 403 U.S. at 102, 91 S.Ct. at 1798 (footnotes omitted).

But *Griffin* then reserves the question of whether non–racially motivated discrimination would be actionable under § 1985.

Plaintiffs argue that they are members of a "class comprised of non–Cities Service personnel attempting to carry ·on business with Cities Service during the course of the strike." Thus they conclude that defendants violated § 1985(3) by causing false arrests[3] for the purpose of discriminating against members of this class.

## III.

Remarks by Senator Edmunds and cases previously decided by our Court, however, paint quite a different picture of what groups constitute protected classes under § 1985(3). According to Edmunds:

> If . . . it should appear that this conspiracy was formed against this man because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, (which is a pretty painful instance that I have in mind in the State of Florida within a few days where a man lost his life for that reason,) then this section could reach it. Cong. Globe, 42d Cong., 1st Sess. 567, 695–96 (1871). ·

He makes a distinction between these class–based wrongs and other types of cases:

> We do not undertake in this bill to interfere with what might be called a private conspiracy growing out of a neighborhood feud of one man or set of men against another to prevent one getting an indictment in the State courts against men for burning down his barn . . .. *Id.*

Otherwise, Congress would have created a general federal tort law, which it did not intend to do.[4]

Senator Edmunds' statement is the most detailed description in the legislative history of the type of class–based discrimination cognizable under § 1985.[5] Because Edmunds was the Senate manager of the

---

**3.** We assume the sole deprivation is that of liberty·-arrest without probable cause in violation of the Fourth Amendment. We recognize that defendants' alleged actions in interfering with a supplier's crossing a picket line may well have violated the Labor–Management Relations Act of 1947, as amended, *see* 29 U.S.C. § 158(b)(4)(ii)(B) (1976). But redress of this infringement must be sought by way of the labor act's administrative scheme. *Cf. Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979)

(Title VII action cannot be brought by way of § 1985). Accordingly, we address only the infringement of liberty.

**4.** *See Griffin·v. Breckenridge*, 403 U.S. at 101–02, 91 S.Ct. at 1798; Cong. Globe, 42d Cong., 1st Sess. 478 (1871) (remarks of Rep. Shellabarger, sponsor of House bill).

**5.** *See also* Cong. Globe, 42d Cong., 1st Sess. 426 (remarks of Rep. McKee); *id.* at 437–39 (remarks of Rep. Cobb).

bill, we afford his statements great weight.[6] If the Klan burns a barn because of racial, religious, political or sectional animus against the owner, they violate the statute. If they burn the barn simply out of personal enmity between the owner and the Klan's Grand Dragon, there is no violation. The violation turns on the need for a class–based motivation for the wrong.

In addition to these hypotheticals, we have several other examples of protected and unprotected classes. Following *Griffin* our Court has been faced at least eight times with groups claiming protection under § 1985. Among the legitimate § 1985(3) classes we have included supporters of a sheriff's political opponent, *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973), anti–Nixon demonstrators, *Glasson v. City of Louisville*, 518 F.2d 899 (6th Cir.), *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975), and members of the Jewish faith, *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973). On the other hand we have excluded classes formed by corporation employees fired for filing OSHA complaints, *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980), a non–Union employer, *Ohio Inns, Inc. v. Nye*, 542 F.2d 673 (6th Cir. 1976), a business owner operating in an area rezoned exclusively for residential use, *Studen v. Beebe*, 588 F.2d 560 (6th Cir. 1978), an individual physician removed from a hospital staff, *O'Neill v. Grayson County War Memorial Hospital*, 472 F.2d 1140 (6th Cir. 1973), and an individual clothing store owner, *Smith v. Martin*, 542 F.2d 688 (6th

Cir. 1976). Other Circuits have been faced with numerous similar classes claiming special protection under § 1985(3).[7] Based on our previous cases and those from other Circuits, we see no analytical distinction between plaintiffs here and unprotected barn owners.

IV.

The words of § 1985 themselves provide guidance in how relevant distinctions are to be drawn between protected and unprotected classes. The phrases–"for the purpose of depriving . . . the *equal* protection of the laws, or . . . the *equal* privileges and immunities"–literally interpreted, refer to any non–random deprivation of rights. But these phrases were largely extracted from the Equal Protection Clause and the Privileges and Immunities Clause of the Fourteenth Amendment.

Equal protection under the Fourteenth Amendment requires varying degrees of equality, depending, *inter alia*, upon the particular class or the type of right that is affected. Congress, in using these words, did not intend that courts provide or withhold § 1985(3) protection based on distinctions on which the legislative history is silent and to which the Fourteenth Amendment is blind. The distinction between classes protected by § 1985(3) and those that are unprotected must be rooted somewhere in traditional equal protection analysis.

Traditional equal protection analysis leads us to the conclusion that there is no

---

6. *See FEA v. Algonquin SNG, Inc.*, 426 U.S. 548, 564, 96 S.Ct. 2295, 2304, 49 L.Ed.2d 49 (1976); *National Woodwork Mfrs. Ass'n v. NLRB*, 386 U.S. 612, 640, 87 S.Ct. 1250, 1266, 18 L.Ed.2d 357 (1967).

7. *Compare Westberry v. Gilman Paper Co.*, 507 F.2d 206 (5th Cir.), *vacated en banc per curiam as moot*, 507 F.2d 215 (5th Cir. 1975) (environmentalist group, protected class); *Smith v. Cherry*, 489 F.2d 1098 (7th Cir. 1973), *cert. denied*, 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974) (persons deceived into voting for sham candidate, protected class); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (worshippers at particular church, protected class); *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) (women, protected class)

*with Bricker v. Crane*, 468 F.2d 1228 (1st Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973) (doctor who testified in malpractice suits, not § 1985 class); *Carchman v. Korman Corp.*, 594 F.2d 354 (3d Cir.), *cert. denied* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979) (tenant organizers not protected); *Baskin v. Parker*, 602 F.2d 1205 (5th Cir. 1979) (white farm families not protected class); *McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (bankrupts not protected); *Askew v. Bloemaker*, 548 F.2d 673 (7th Cir. 1976) (homeowners raided by federal drug enforcement agents not protected); *Blevins v. Ford*, 572 F.2d 1336 (9th Cir. 1978) (class of nonlawyers unprotected).

distinction between plaintiffs' class and that of the unprotected barn owner in Senator Edmunds' hypothetical. Equal protection grants the same degree of scrutiny to both groups. Neither plaintiffs nor the barn owner belongs to any suspect class or other group entitled to more than "mere rationality" analysis.[8] Plaintiffs, as picket line crossers, may be within a class specially recognized and protected by the Labor–Management Relations Act.[9] But special recognition by federal labor law does not indicate that plaintiffs are discrete and insular minorities.[10] Plaintiffs' class does not suffer the sort of prejudice "which tends . . . to curtail the operation of those political processes ordinarily to be relied upon to protect minorities" in our society.[11]

Plaintiffs have been denied the fundamental right to remain at liberty from state confinement absent probable cause for arrest. In Edmunds' hypothetical, the barn owner is denied the fundamental right to petition state courts for a redress of grievances. In both cases, the victim may have been deprived of due process, but neither plaintiffs nor the barn owner suffered class–based discrimination *on account of* a peculiar exercise of a fundamental right.[12] In other words, a particular exercise of a fundamental right in a class–based manner is not the basis for either discrimination and thus is not the binding force that joins either class.

The fact that plaintiffs were all denied a fundamental right would not in itself place them in a protected class. If defendants tried at random to deprive anyone of exercising that right, their motive for the deprivation would touch all equally, without discrimination. There would be no purposeful denial of *equal* protection. In *Taylor v. Brighton Corp.*, 616 F.2d 256 (6th Cir. 1980),[13] our Court found no class–based discrimination where the defendant employer's conduct was aimed at depriving everyone of a right to complain to the Secretary of Labor. The motive was to deny the right equally. We agree with the general test that *Brighton* employs, a test that charts one outer limit of § 1985(3): the wrongful purpose must be directed toward one discrete group and not equally toward all.

Even the non–randomness of the intended deprivation here does not fully satisfy the requirements of § 1985. In Edmunds' examples the same non–random deprivation of fundamental rights was suffered by both protected and unprotected classes. The important distinction the examples and our cases make is the manner in which the fundamental right is exercised. In each protected case, the tortfeasor's animus is sparked, and the class formed, by the unique and peculiar fashion in which a class

---

8. *See Williamson v. Lee Optical*, 348 U.S. 483, 491, 75 S.Ct. 461, 466, 99 L.Ed. 563 (1955); J. Ely, Democracy and Distrust ch. 6 (1980).

9. *See* note 3 *supra*.

10. *Cf. McLellan v. Mississippi Power & Light Co.*, 545 F.2d 919 (5th Cir. 1977) (en banc) (persons protected by Bankruptcy Act not a class for purposes of § 1985(3)).

11. *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 53 n. 4, 58 S.Ct. 778, 783, n. 4, 82 L.Ed. 1234 (1938); *see also* L. Tribe, American Constitutional Law § 16 13, at 1012 (1978).

12. Arguably there is more state action in plaintiffs' case than in the hypothetical. Plaintiffs suffered harm through an affirmative, though innocent, act of the state. It may well be that this action amounts to a technical violation of the Fourteenth Amendment, whereas in all Edmunds' examples, the passive involvement of the state may not constitute such a violation.

These distinctions are irrelevant for our inquiry. We are concerned with defendants' discriminatory motive in making class based distinctions, not the degree of state involvement in the underlying tort.

13. Notwithstanding any differences we may have with certain language in *Brighton*, we agree with its holding. The Supreme Court in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), dealing with Title VII rights, held that plaintiffs cannot use § 1985(3) to circumvent administrative remedies erected to protect statutory rights. An employee who is terminated for filing an OSHA complaint, described in *Brighton*, must seek remedies through administrative procedures. These procedures are designed to protect the type of rights that were allegedly violated in *Brighton*. Consequently, the *Brighton* plaintiffs should have no cause of action under § 1985(3).

of victims exercises a fundamental right. In contrast, the discriminatory animus of the barn owner's neighbors is sparked by personal animosity, not the barn owner's peculiar exercise of a constitutional right.

Senator Edmunds' protected groups and the classes in *Cameron, Glasson* and *Marlowe* all possess additional "Equal Protection" features that the barn owner and plaintiffs lack. In all these examples tortfeasors discriminate against their victims precisely because of the distinct manner in which the latter exercise their fundamental rights.

Discriminating only against Democrats (an example given by Senator Edmunds), anti–Nixon demonstrators (*Glasson*), or particular local candidates (*Cameron*), deprives these groups of the peculiar manner in which they exercise their "fundamental right" of free speech. The same is true for Methodists, Catholics (both examples given by Edmunds), or Jews (*Marlowe*), regarding the fundamental right of free exercise of religion. Given the historic context of the Civil Rights Act of 1871, Edmunds' remarks about discrimination against Vermonters in Florida may have related to depriving Union sympathizers–and not Confederates–of their freedom to support the Union. Alternatively, it may have related to depriving only Northerners–and not Southerners–of the "fundamental right" to travel freely from the North to the South. By the same token, neither operating a business (*Studen; Smith*) nor working in a hospital (*O'Neill*), nor refusing to bargain with union members (*Ohio Inns*) is an exercise of a fundamental right, much less a peculiar and unique manner of exercising such a right.

By failing to show the unique fashion in which they exercise a fundamental right, plaintiffs fail to allege that they are members of a protected class. Defendants here, given their motive, would have thwarted due process for all those–and only those–who crossed the picket line. Crossing a picket line is not a special exercise of the right to a probable cause arrest in the same sense–to use another of Edmunds' examples–that being a Democrat is a discrete and particular exercise of the First Amendment. Thus, plaintiffs' class is simply one of picket line crossers. No matter how "invidious" any discrimination against this class may be, the right to cross a picket line is no more *constitutionally* protected than is the right to be an unpopular barn owner.

The Fourteenth Amendment also recognizes a distinction between reasonable and unreasonable classifications. Congress, however, did not intend courts under § 1985(3) to scrutinize classifications on the basis of reasonableness. Discrimination against the hypothetical barn owner, as well as most other discriminatory classifications that culminate in a tort, is unreasonable *per se.* Section 1985(3) clearly does not reach all torts or equal protection violations measured by the rationality test.

We do not by any means foreclose § 1985(3) protection to new classes, classes evolving in constitutional significance. Courts, in the guise of finding or failing to find reasonable bases for discrimination, often *sub silentio,* apply greater scrutiny where certain "non–suspect" groups are affected.[14] Under our analysis § 1985 may well protect these groups.[15] These questions we need not decide.

Nor do we decide, under sections 1 or 5 of the Fourteenth Amendment or any other constitutional provision, whether Congress is empowered to punish private individuals who induce state officials to make false arrests.[16] We simply conclude that Con-

14. See *Craig v. Boren*, 429 U.S. 190, 210 11 n.*, 97 S.Ct. 451, 463, 50 L.Ed.2d 397 (1976) (Powell, J., concurring); *Vlandis v. Kline*, 412 U.S. 441, 458, 93 S.Ct. 2230, 2239, 37 L.Ed.2d 63 (1973) (White, J., concurring); L. Tribe, American Constitutional Law 1082 98 (1978).

15. See *Life Ins. Co. of N. Am. v. Reichardt*, 591 F.2d 499 (9th Cir. 1979) (§ 1985 covers gender based discrimination); *Conroy v. Conroy*, 575 F.2d 175 (8th Cir. 1978) (same).

16. See *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966); *United States v. Guest*, 383 U.S. 745, 761, 86 S.Ct. 1170, 1180, 16 L.Ed.2d 239 (1966) (Clark, J., concurring); *id.* at 774 (Brennan, J., concurring and dissenting); *Murphy v. Mount Carmel*

gress did not intend plaintiffs' class to fall within the ambit of § 1985(3).

We also affirm the District Court's dismissal of § 1986. Section 1986 is designed to punish those who aid and abet violations of § 1985. We find no violation of § 1985. Accordingly, there can be no violation of § 1986.

Costs are taxed against the appellants.

*High School*, 543 F.2d 1189 (7th Cir. 1976) (state action required under § 1985(3) for infringement of First Amendment); *see generally* Cox, *Constitutional Adjudication and the Promotion of Human Rights*, 80 Harv.L.Rev. 91 (1966); Frantz, *Congressional Power to En-* *force the Fourteenth Amendment Against Private Acts*, 73 Yale L.J. 1353 (1964); Note, *Federal Power to Regulate Private Discrimination: The Revival of The Enforcement Clauses of the Reconstruction Era Amendments*, 74 Colum.L. Rev. 449 (1974).