Joseph JEFFRIES, et al., Plaintiffs,

v.

Richard F. CELESTE, et al., Defendants.

No. C–3–85–80.

United States District Court, S.D. Ohio, W.D.

Dec. 11, 1986.

Jeffrey M. Silverstein, Dayton, Ohio, for plaintiffs.

Rita A. Eppler, Jeffrey R. Goldsmith, Asst. Attys. Gen., Columbus, Ohio, for defendants.

DECISION AND ENTRY GRANTING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE MOTION FOR SUMMARY JUDGMENT (DOC. #21); PLAINTIFFS' COMPLAINT ORDERED DISMISSED WITH PREJUDICE INSOFAR AS IT SEEKS MONETARY DAMAGES AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITY AND INSOFAR AS CLAIMS ARE BASED ON 42 U.S.C. §§ 1985 & 1986; PLAINTIFFS' PENDENT STATE AGE DISCRIMINATION CLAIMS ORDERED DISMISSED WITHOUT PREJUDICE

RICE, District Judge.

This case is before the Court on Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. #21). For the reasons set forth below, said motion is granted in part and overruled in part.

Plaintiffs in this case are former employees of the Ohio Lottery Commission who were terminated from employment in mid-February, 1984. With the exception of Plaintiff Jeffries, each is a member of the Republican party. The Plaintiffs allege that their termination was illegal because: (a) they were denied equal protection of the law in being discriminated against because they were Republicans, in violation of the fourteenth amendment made actionable by 42 U.S.C. §§ 1983, 1985 & 1986; (b) they were denied due process of law in that they had a property interest in continued employment and were not afforded pretermination hearings by the Defendants; (c) they were denied their first amendment rights of association and free speech as made applicable to the state of Ohio by the fourteenth amendment; and (d) they were discriminated against because of their age, in violation of Chapter 4112 of the Ohio Revised Code.

Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment makes five arguments: (a) Plaintiffs Complaint fails to state a claim upon which relief can be granted because Defendants are immune from liability in their official capacities under the eleventh amendment; (b) no genuine issue of material fact exists as to the personal involvement of Defendant Richard F. Celeste; (c) Plaintiffs had no constitutionally protected property right in continued employment with the Ohio Lottery Commission; (d) employment discrimination because of political affiliation fails to state a claim upon which relief can be granted under 42 U.S.C. §§ 1985 & 1986; and (e) Plaintiffs' pendent age discrimination claims should be dismissed as outside of the scope of the Court's proper pendent jurisdiction.

Initially, the Court notes that Plaintiffs have indicated that they do not wish to proceed with their pendent state age discrimination claims in this lawsuit (no claims against the Defendants under the Federal Age Discrimination in Employment Act were alleged by Plaintiffs). *See* Plaintiffs' Memorandum Contra Defendants' Motion to Dismiss/Motion for Summary Judgment (Doc. #25) at 4. Accordingly, Plaintiffs' pendent age discrimination claims are dismissed without prejudice. The Court will deal with Defendants' remaining arguments in the order Defendants have raised them.

## A. ELEVENTH AMENDMENT IMMUNITY

Defendants in this case argue that to the extent Plaintiffs' claims are against them in their official capacity, said claims are barred by the eleventh amendment to the United States Constitution. However, upon review of the relevent authorities, the Court finds that the eleventh amendment bars Plaintiffs' claims only insofar as they seek monetary damages from the Defendants in their official capacity; the Court finds that the eleventh amendment does not bar Plaintiffs' claims insofar as they

seek monetary damages from the Defendants in their individual capacities or insofar as they seek prospective injunctive relief against the Defendants in their official capacities.

The eleventh amendment of the United States Constitution states:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or by Citizens or Subjects of any Foreign State.

In construing this language, the Supreme Court has found that "[t]he Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 101, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (*quoting Ford Motor Company v. Department of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945)). However, "a suit challenging the constitutionality of a state official's action is not one against the State." *Id.* at 102, 104 S.Ct. at 909 (*citing Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). When a state official is sued in his or her official capacity for a violation of the United States Constitution, a court may award injunctive relief governing the official's future conduct, but may not award retroactive monetary relief against that defendant in his or her official capacity. *Id.*, 465 U.S. at 102–103, 104 S.Ct. at 909–910; *Edelman v. Jordan*, 415 U.S. 651, 666–68, 94 S.Ct. 1347, 1357–58, 39 L.Ed.2d 662 (1974); *Spruytte v. Walters*, 753 F.2d 498, 514 (6th Cir.1985) ("*Edelman v. Jordan* ... clearly permits a federal court to award prospective injunctive relief against state officials when the claim is based on federal law."); *Lee v. Western Reserve Psychiatric Habilitation Center*, 747 F.2d 1062, 1066 (6th Cir.1984) ("[T]he *Young* exception is limited to the award of prospective injunctive relief. Retroactive relief and damages are barred under the eleventh amendment."). Thus, Defendants are only partially correct in their assertion that the eleventh amendment bars relief against them in their official capacities. Plaintiffs are barred from seeking retroactive monetary damages from the Defendants in their official capacities, but are permitted to seek future injunctive relief, such as reinstatement to their former positions, against the Defendants in their official capacities.

On the other hand, Plaintiffs may seek monetary damages from the Defendants in their individual capacities. As the Supreme Court stated in *Scheuer v. Rhodes*, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974): "While it is clear that the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury, ... damages against individual defendants are a permissible remedy in some circumstances notwithstanding the fact that they hold public office." (citations omitted). More specifically,

> [a] claim for damages against individual defendants seeking to impose individual liability for action taken under color of state law is not prohibited. Only if the purpose of a lawsuit is to coerce a state action by the official sued and to impose liability which "*must* be paid from public funds" does the eleventh amendment apply.

*Wilson v. Beebe*, 770 F.2d 578, 588 (6th Cir.1985) (emphasis in original) (*quoting Edelman v. Jordan*, 415 U.S. at 663, 94 S.Ct. at 1356). Moreover, the fact that the state of Ohio may indemnify the Defendants for any damages imposed does not create eleventh amendment immunity for those employees. *See Spruytte*, 753 F.2d at 512 n. 6 ("A government may not manufacture immunity for its employees by agreeing to indemnify them."). The Defendants in this suit, therefore, are not protected from liability for monetary damages in their individual capacities by the eleventh amendment.

In sum, the Court grants Defendants' motion with respect to eleventh amendment immunity insofar as it seeks to bar Plaintiffs from recovering monetary damages from the Defendants in their official capacities. However, said motion is overruled

insofar as it seeks to bar the Plaintiffs from gaining prospective injunctive relief against the Defendants in their official capacities or monetary damages against the Defendants in their individual capacities. Should Plaintiffs prove their claims at trial, they would be entitled to seek prospective injunctive relief in the form of reinstatement into their former positions, compensatory damages within the limitations set by the Supreme Court in *Memphis Community School District v. Stachura,* — U.S. ——, 106 S.Ct. 2537, 2541–45, 91 L.Ed.2d 249 (1986), and punitive damages, *see Smith v. Wade,* 461 U.S. 30, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

## B. LIABILITY OF RICHARD F. CELESTE

Defendants also argue that no genuine issue of material fact exists indicating the involvement of Governor Richard F. Celeste in the alleged deprivation of Plaintiffs' constitutional rights. In support of this assertion, they rely upon the affidavits of Thomas V. Chema (attached to Doc. # 21) and Richard F. Celeste (attached to Doc. # 23) which indicate that Governor Celeste never discussed any personnel decisions of the Ohio Lottery Commission with Mr. Chema. These affidavits are uncontroverted, and so the Court must agree that there is no genuine issue of material fact as to Governor Celeste's actual involvement in the termination decisions here in question.

■ However, on page 52 of the deposition of Mr. Chema (attached to Doc. # 25), he (Mr. Chema) states: "It was our desire, as part of the Celeste administration team, to try to operate the agency in such a way that it would be substantially valuable to the people of the state of Ohio and politically valuable to the Governor." Mr. Chema was apparently an appointee of Governor Celeste. Accordingly, the Court must find, drawing all inferences in favor of the Plaintiffs, that Mr. Chema's statement at page 52 in his deposition raises a genuine issue of material fact as to whether he was acting within his scope of authority as an agent for the Governor in making the ter-

mination decisions here in question. Thus, the Court finds that it cannot grant summary judgment to Defendant Richard F. Celeste.

## C. DUE PROCESS PROPERTY RIGHTS

■ Defendants also argue that Plaintiffs' due process claims must be dismissed because they (the Plaintiffs) had no property interest in continued employment protectable by the requirements of the fourteenth amendment. Specifically, Defendants argue that Plaintiffs were unclassified state employees and therefore terminable at will. Plaintiffs, however, claim that the "Progressive Discipline Policy" of the Ohio Lottery Commission (attached to Doc. # 25) created a contractual right to continued employment absent good cause for termination as provided in that policy, and accordingly that they had a property interest protected by the due process clause of the fourteenth amendment in continued employment with the Ohio Lottery Commission.

"Property interests are not created by the Constitution, 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...'". *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985) (*quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)). It is clear in this case that Plaintiffs are not classified employees, and so that they do not have a property interest created by statute. However, a contractual right to continued employment absent good cause for discharge may also constitute a property right protectable by the fourteenth amendment. *See Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.

In Ohio, a number of the courts of appeals have recognized that under state law an "employer's promulgation of employment manuals or employee handbooks, or other writings styled 'personnel policies and practices,' can create contractual rights which the employer may not abridge

without incurring liability." *Helle v. Landmark, Inc.,* 15 Ohio App.3d 1, 8, 472 N.E.2d 765, 773 (Lucas Cty.Ct.App.1984); *see also Hedrick v. Center for Comprehensive Alcoholism Treatment,* 7 Ohio App.3d 211, 212–14, 454 N.E.2d 1343, 1345–46 (Hamilton Cty.Ct.App.1982); *Czerkas v. United States Steel Corp.,* No. 3823, slip op. (Lorain Cty.Ct.App. November 13, 1985) [Available on WESTLAW, OH–CS database]; *Bonfiglio v. Liqui-Box Corp.,* No. CA–835, slip op. (Ashland Cty.Ct.App. October 23, 1985); *Martinez v. The Wood County Hospital Association,* No. WO–85–12, slip op. (Wood Cty.Ct.App. June 28, 1985); *Hampton v. Van Dorn Company,* No. CA–6312, slip op. (Stark Cty.Ct.App. June 15, 1984); *Day v. Good Samaritan Hospital and Health Center,* No. 80–62, slip op. at 25 (Montgomery Cty.Ct.App. August 17, 1983); *but see Jones v. East Center for Community Health, Inc.,* 19 Ohio App.3d 19, 482 N.E.2d 969 (Lucas Cty.Ct. App.1984); *Rachubka v. St. Thomas Hospital Medical Center,* No. 11596, slip op. (Summit Cty.Ct.App. October 10, 1984). Whether an employee manual or set of policies and practices creates an employment contract is a question for the jury. *See Gelow v. Chesrown Oldsmobile-GMC,* No. 84AP–610, slip op. (Franklin Cty.Ct. App. October 15, 1985); *cf. Williams v. City Loan & Savings Co.,* No. 85–C–1, slip op. at ——, (Columbiana Cty.Ct.App. November 14, 1985) ("[W]e conclude that there may be a variety of exceptions to the 'employment-at-will' doctrine. Whether or not these exceptions can be proven rests on the merits of each individual case. In the instant case we find under the facts as brought forth by the pleadings, affidavits and statements of authorities that a genuine issue of material fact exists and therefore summary judgment is not appropriate.").

Applying this Ohio law of employment contracts to the facts of the present case, the Court finds that a genuine issue of material fact exists as to whether Plaintiffs had a property right in their continued employment with the Ohio Lottery Commission. The "Progressive Discipline Policy"

attached to Plaintiffs' Memorandum Contra Defendants' Motion to Dismiss/Motion for Summary Judgment (Doc. #25) raises a jury question as to whether Plaintiff had a contractual right to continued employment absent a showing of good cause for discharge. As noted above, such a contractual right may constitute a property interest protected by the due process clause of the fourteenth amendment. Thus, a jury question exists as to whether Plaintiffs had a property interest protectable by the due process clause of the fourteenth amendment in their continued employment with the Ohio Lottery Commission.

In reaching this conclusion, the Court notes that this case is distinguishable from *Bates v. Sponberg,* 547 F.2d 325 (6th Cir. 1976), cited by the Defendants. In *Bates,* the Sixth Circuit held that "[i]t is not every disregard of its regulations by a public agency that gives rise to a cause of action for violation of constitutional rights. Rather, it is only when the agency's disregard of its rules results in a procedure which in itself impinges upon due process rights that the federal court should intervene in the decisional processes of state institutions." *Id.* at 329–30. In the present case, the issue is not whether the Ohio Lottery Commission must follow all of the procedures set forth in the "Progressive Discipline Policy", but whether that policy created a property right which entitled Plaintiffs to at least minimal due process protections.

Accordingly, Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment must be overruled insofar as it seeks to have the Court dismiss Plaintiffs' due process claims.

D. SECTION 1985 AND 1986 CLAIMS

 Finally Defendants argue that Plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986 must be dismissed because those sections do not afford protection to members of purely political groups. Based upon the language, albeit dicta, of *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. 825, 835–37, 103 S.Ct. 3352,

3359–61, 77 L.Ed.2d 1049 (1983), the Court must agree and, accordingly, grant this branch of Defendants' motion.

Initially, the Court notes that Plaintiffs' Section 1986 claims are dependent upon their 1985 claims. *See Shimman v. International Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1236 n. 15 (6th Cir.1984); *Browder v. Tipton,* 630 F.2d 1149, 1155 (6th Cir.1980). Accordingly, if the Court finds that Plaintiffs have failed to state a claim under Section 1985, their Section 1986 claims must also be dismissed.

In *United Brotherhood of Carpenters and Joiners v. Scott,* 463 U.S. at 836, 103 S.Ct. at 3360, the Supreme Court analyzed the reach of Section 1985(3):

> [I]t is a close question of whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans. The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political power. The predominant purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others such as Northerners who came South with sympathetic views towards the Negro. Although we have examined with some care the legislative history that has been marshaled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or to do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far towards making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondent's submissions were accepted, the proscription of § 1985(3) would arguably reach to the claim that a political party had interfered with the freedom of speech of another political party by encouraging the heckling of its rival speakers and the disruption of the rival's meeting.

Prior to *Scott,* the Sixth Circuit had taken a broad view of the types of discrimination protected against by § 1985(3). *See Browder v. Tipton,* 630 F.2d 1149, 1150–54 (6th Cir.1980). Moreover, other circuits considering the scope of § 1985(3) prior to *Scott* found that Republicans were a protected class within the meaning of that statute. *See Keating v. Carey,* 706 F.2d 377 (2d Cir.1983). However, the legislative history relied upon by the Sixth Circuit in its expansive reading of the scope of protection of § 1985(3), *see* 630 F.2d at 1153–1154 (citing Senator Edmunds' description of protected classes in the legislative history), and by the Second Circuit in finding the section covers Republicans, *see* 706 F.2d at 387–88 (citing the same description), was specifically disapproved of by the Supreme Court in *Scott, see* 463 U.S. at 836–37, 103 S.Ct. at 3360–61 ("the provision that is now § 1985(3), however, originated in the *House.* The narrowing amendment, which changed § 1985(3) to its present form, was proposed, debated, and adopted there, and the *Senate* made only technical changes to the bill." (emphasis added)).

Sixth Circuit cases addressing the scope of § 1985(3) since *Scott* have not reached the question of whether political parties are protected classes within § 1985(3). *See Averitt v. Cloon,* 796 F.2d 195, 198 (6th Cir. 1986) (class of individuals with prior criminal convictions not protected by § 1985(3)); *Murphy v. International Union of Operating Engineers, Local 18,* 774 F.2d 114, 128–29 (6th Cir.1985) (class of dissident union members not protected by § 1985(3)); *Shimman v. International Union of Operating Engineers Local 18,* 744 F.2d at 1236–37 (same). However, the one circuit that has addressed the issue since *Scott,* has found that Republicans are not a class protected by § 1985(3). *See Harrison v. KVAT Food Management, Inc.,* 766 F.2d 155, 162 (4th Cir.1985); *cf. Schultz v.*

*Sundberg,* 759 F.2d 714, 718 (9th Cir.1985) (a "transitory coalition of state representatives" is not a protected class under § 1985(3)).

Accordingly, the Court must conclude that Republicans, at least insofar as their activities are not directed towards protection of racial groups, are not a protected class under § 1985(3) and thus also under § 1986. Accordingly, Defendants' motion is well taken with respect to Plaintiffs' claims under 42 U.S.C. §§ 1985 and 1986, and, therefore, those claims are hereby dismissed.

In sum, the Court has made the following rulings with respect to Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment:

1. Plaintiffs' state age discrimination claims are voluntarily dismissed without prejudice;

2. Plaintiffs' claims against Defendants are barred insofar as those claims seek monetary relief against the Defendants in their official capacities, but not insofar as those claims seek prospective injunctive relief against those Defendants in their official capacities or monetary relief against those Defendants in their individual capacities;

3. Genuine issues of material fact exist as to whether Governor Celeste may be liable on Plaintiffs' claims, insofar as Defendant Thomas V. Chema may have been acting as the agent of the Governor with regard to the termination decisions that are the subject matter of this lawsuit;

4. Genuine issues of material fact exist as to whether Plaintiffs have a property right protectable by the due process clause of the fourteenth amendment in their continued employment with the Ohio Lottery Commission; and

5. Plaintiffs claims under 42 U.S.C. §§ 1985 and 1986 fail to state a claim upon which relief can be granted.

Defendants' motion is accordingly granted in part and overruled in part.

1. Since Plaintiff Jeffries, as noted above, is a Democrat rather than a Republican, he has no

Remaining for trial in this case are Plaintiffs' claims for prospective injunctive relief against the Defendants in their official capacities (reinstatement) and compensatory and punitive damages against the Defendants in their individual capacities under 42 U.S.C. § 1983 for violation of the Plaintiffs' fourteenth amendment equal protection and due process rights and their first amendment rights of association and free speech as made applicable to the states by the fourteenth amendment.[1]

equal protection claim or first amendment claim, only a due process claim.