**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0155n.06

Nos. 19-5514/5557

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| DÉJÀ VU OF NASHVILLE, INC.; THE PARKING GUYS, INC., | ) ) ) | **FILED** Mar 13, 2020 DEBORAH S. HUNT, Clerk |
| Plaintiffs-Appellants/Cross-Appellees, | ) ) | |
| v. | ) ) | |
| METROPOLITAN GOVERNMENT OF NASHVILLE & DAVIDSON COUNTY, TENNESSEE, acting by and through its Traffic and Parking Commission; FREDDIE O'CONNELL, Individually; LEE MOLETTE, Individually, | ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| Defendants-Appellees, | ) ) | OPINION |
| LINDA SCHIPANI, | ) ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |

**BEFORE:** **STRANCH, READLER, and MURPHY, Circuit Judges**

**JANE B. STRANCH, Circuit Judge.** Déjà Vu of Nashville, Inc., an adult entertainment business, contracted with The Parking Guys, Inc. for valet parking services. The Metropolitan Government of Nashville and Davidson County (Metro) denied a valet permit to The Parking Guys and it appealed the denial to the Traffic and Parking Commission. Metro Council Member Freddie O'Connell and private citizens Linda Schipani and Lee Molette, Midtown Nashville businesspersons, opposed the valet permit based on stated concerns about traffic congestion and safety risks in the area. The Commission voted to deny the permit and Plaintiffs unsuccessfully appealed. Déjà Vu and The Parking Guys also brought federal civil rights claims under 42 U.S.C.

§§ 1983 and 1985 against Metro, Freddie O'Connell, Linda Schipani, and Lee Molette. All Defendants moved to dismiss Plaintiffs' complaint and the district court granted their motions. We **AFFIRM** the challenged dismissal of the complaint.

## I.   BACKGROUND

Déjà Vu of Nashville, Inc. is a business "engaged in the presentation of female performance dance entertainment to the consenting adult public." In 2016, Déjà Vu decided to relocate from its long-time location to a new building in an adult-use zone on Church Street, in the Midtown Nashville neighborhood. The move was opposed by Council Member Freddie O'Connell, who proposed an ordinance to eliminate the "adult use" zoning in the area, which would prevent Déjà Vu from operating the club in the new location. The ordinance was ultimately withdrawn and Déjà Vu was granted a license for operation in May 2017.

Déjà Vu subsequently entered into a written agreement with The Parking Guys, Inc. (TPG)[1] to provide valet services on Church Street and the intersecting 15th Avenue. TPG applied for a valet permit, which was initially denied by Metro Public Works for the stated reason that parking is not allowed on Church Street or 14th Avenue at the property. TPG appealed the denial, and a hearing was scheduled before the Metro Traffic and Parking Commission; TPG received temporary permits to operate the valet service near the Club while the appeal was pending.

Before and during the appeals process, Plaintiffs claim that Lee Molette, a local businessman; Linda Schipani, owner of a building near the Club; Council Member O'Connell; and Metro—through the Commission—conspired to deny the valet permit. They point to: statements made by Molette and O'Connell to a local newspaper complaining about Déjà Vu; emails exchanged between Schipani, Molette, and Metro employees that advocated for the denial of the

---

[1] Deja Vu and TPG will be referred to collectively as Plaintiffs.

valet permit; and testimony by Schipani and Molette at the July 10, 2017 Commission hearing addressing the adverse traffic consequences of the valet service.

At that hearing, Metro employees testified that the requested valet permit could meet the technical requirements of the Metro Code. The Commission then deferred the matter and hired Collier Engineering Co., Inc. to conduct a study of the traffic impacts of the valet permit. Collier reviewed the valet maneuvers by TPG over the course of one weekend and found minimal traffic disruptions. Nonetheless, in an email to the Metro Public Works engineer on August 14, O'Connell noted that property owners in the area have demonstrated "an extraordinary amount of inappropriate vehicular activity at the intersection in question" and he believed that "a valet here would present unfortunate public safety concerns, traffic and parking issues that could affect performance of emergency vehicles, and general negative traffic and parking issues for area users of the public right of way." That same day, the Commission considered previous testimony, the Collier Engineering report, and the letter from O'Connell and voted to deny a valet permit to TPG.

TPG filed a petition for writ of certiorari in the Chancery Court for Nashville and Davidson County, which was denied on July 6, 2018. Plaintiffs also filed the present action in district court alleging 42 U.S.C. §§ 1983 and 1985 claims against Metro, O'Connell, Molette, and Schipani. All Defendants filed motions to dismiss; Molette and Schipani asserted witness immunity against Plaintiffs' claims. The District Court dismissed the § 1983 and § 1985 claims and did not reach the question of immunity. Plaintiffs appeal the dismissal of the § 1985 claims, and Schipani filed a cross-appeal based on immunity under Tenn. Code Ann. § 4-21-1003, which allows for the recovery of costs and attorney's fees. Schipani also filed a motion for appellate sanctions against Plaintiffs for prosecuting a frivolous appeal.

## II.   ANALYSIS

As a preliminary matter, Schipani contends that Déjà Vu lacks standing and its claims should be dismissed because TPG alone was denied the valet permit and Déjà Vu suffered no injury. To establish Article III standing at this stage, Déjà Vu must allege facts demonstrating that it has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). Déjà Vu alleged that it was injured by the infringement of its First Amendment rights; it would lose income at the Club without the valet permit. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("[the government] may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech."). Déjà Vu also pled that its injury resulted from a civil conspiracy, traceable to Schipani because of her emails and statements, and that the alleged infringement of First Amendment rights is redressable with the remedies it sought: a declaratory judgment, money damages, attorney's fees, and costs. The district court did not err in finding that Déjà Vu has standing to bring suit against Schipani and the others.[2]

Plaintiffs raised both § 1983 and § 1985 claims in the district court. Plaintiffs do not address or argue their § 1983 claims on appeal, and they are waived. *See, e.g.*, *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005) ("failure to raise an argument in [an] appellate brief constitutes a waiver of the argument on appeal.").

---

[2] Schipani also argues that we lack subject matter jurisdiction to consider Plaintiffs' claims against Schipani, O'Connell, and Metro because Plaintiffs' notice of appeal designated Docket No. 66, which referred only to the order that granted Molette's motion to dismiss, not that of the other defendants. Though Molette asserted the same claims as Schipani, he filed at a different time. Schipani argues that Plaintiffs' notice violated Rule 3(c)(1)(B) of the Federal Rules of Appellate Procedure, which requires the contents of a notice of appeal to "designate the judgment, order, or part thereof being appealed." We liberally construe the requirements of Rule 3. *Smith v. Barry*, 502 U.S. 244, 248 (1992). Plaintiffs' notice of appeal referenced the final entry of judgment for the case, which referred to the order that also granted a stipulated motion for entry of order that addressed the motions of Schipani, Metro, and O'Connell. Schipani's jurisdictional argument is without merit.

**A. § 1985**

We turn to whether the allegations of the complaint state a § 1985 claim. We review the district court's order granting Defendants' motions to dismiss de novo. *Jackson v. Sedgwick Claims Mgmt. Servs., Inc.*, 731 F.3d 556, 562 (6th Cir. 2013) (en banc) (*citing Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012)).

Metro and O'Connell first assert on appeal that Plaintiffs lack constitutional standing for their § 1985 claims because they are not members of a cognizable class protected under the statute. But as discussed above, Plaintiffs have Article III standing based on the facts they alleged. Whether the complaint alleges that Plaintiffs are members of a cognizable class is not a standing issue; it goes to whether a § 1985 claim has been properly stated. *See Macko v. Bryon*, 641 F.2d 447, 450 (6th Cir. 1981) (affirming grant of summary judgment on § 1985(3) claim because the complaint contains no allegation "that defendants acted with a class-based invidiously discriminatory animus" and there was no "cognizable class which is the object of the conspiracy" per the requirements of § 1985(3)).

Section 1985(3) provides a private right of action against those who conspire to violate civil rights. It states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). "To state a § 1985 claim, a plaintiff must allege '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Webb v. United States*, 789 F.3d 647, 671–72 (6th Cir. 2015) (quoting *Vakilian v. Shaw,* 335 F.3d 509, 518–19 (6th Cir. 2003)).

In addition to the existence of a conspiracy, § 1985 claims must allege "class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). The alleged class "must be based upon race or other 'inherent personal characteristics.'" *Webb*, 789 F.3d at 672 (quoting *Browder v. Tipton,* 630 F.2d 1149, 1150 (6th Cir. 1980)). "[A] claimant must prove both membership in a protected class and discrimination on account of it." *Estate of Smithers ex rel. Norris v. City of Flint*, 602 F.3d 758, 765 (6th Cir. 2010).

The district court dismissed Plaintiffs' § 1985 claim because their "complaint contains not a single allegation about a group of individuals that share their desire to engage in the same First Amendment activity opposed by Defendants, let alone that the amorphous group was subjected to racially discriminatory animus because of their desire." The relevant questions are whether Plaintiffs sufficiently pled their membership in a class and if so, whether that class is protected under the statute.

We turn to the allegations of the complaint. While the full contours of what qualifies as a protected class under the statute are unclear, it is recognized that the class must be "something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 269 (1993). Plaintiffs argue on appeal that they belong to a "class" of organizations engaged in the presentation

of female dance or a "class" of gentlemen's clubs, citing only to the complaint's descriptions of Déjà Vu. The complaint does not allege membership in a protected class, or that there was any discriminatory animus on account of class membership. *See, e.g.*, *Volunteer Med. Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 224 (6th Cir. 1991) (noting in the analysis of class-based animus that the class of individuals protected under § 1985(3) are the "discrete and insular" minorities that receive special protection under the Equal Protection clause because of inherent personal characteristics (quoting *Browder*, 630 F.2d at 1150)). In fact, the complaint contains no indication of any class membership at all. Plaintiffs therefore failed to state a claim under § 1985 against any of the defendants in their complaint.

### B. Immunity Claims

Schipani and Molette[3] assert immunity as witnesses under Tenn. Code Ann. § 4-21-1003(a), which grants immunity from civil liability on claims based upon any person's communication to a governmental agency in matters of concern to that agency. The statute also provides that "[a] person prevailing upon the defense of immunity provided for in this section shall be entitled to recover costs and reasonable attorneys' fees incurred in establishing the defense." Tenn. Code Ann. § 4-21-1003(c). The decision below noted that because it never reached the issue of immunity, Schipani is not entitled to attorney's fees under § 4-21-1003(c).

We review the district court's decision not to reach the witness immunity issue for abuse of discretion. *See, e.g.*, *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (applying an abuse-of-discretion standard to review the district court's decision not to hear a state-law claim). Plaintiffs' complaint alleges that Molette and Schipani engaged in a conspiracy with the Commission and includes as exhibits the substance of their testimonies to the Commission.

---

[3] Molette did not file a cross-appeal but makes the same immunity arguments for costs and fees in his appellate brief.

Resolution of the immunity issue, however, was not necessary to the district court's determination to grant the motions to dismiss, and as a result Molette and Schipani did not "prevail" upon the defense of immunity. Nor do Molette and Schipani adequately explain how this *state* immunity statute authorizing attorney's fees would even apply to *federal* causes of action in federal court. *See Martinez v. California*, 444 U.S. 277, 284 n.8 (1980); *Wilson v. Elliott County*, 198 F. App'x 471, 474 (6th Cir. 2006); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 901 (9th Cir. 2010). The district court did not abuse its discretion in finding that Schipani is not entitled to attorney's fees.

### C. Motion for Sanctions

Schipani filed a motion for appellate sanctions against Plaintiffs for prosecuting a frivolous appeal under Rule 38 of the Federal Rules of Appellate Procedure, 28 U.S.C. § 1912, and 28 U.S.C. § 1927. Because this appeal does not meet the legal standards of a frivolous appeal, we deny Schipani's motion.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's dismissal of Plaintiffs' claims and **DENY** Schipani's motion for appellate sanctions.