**VOLUNTEER MEDICAL CLINIC, INC., Plaintiff–Appellee,**

v.

**OPERATION RESCUE, et al., Defendants,**

**Duane A. Peters (90–5159); Carol A. Zimmerman (90–5160); Mark S. Bodine (90–5161); Charles Franklin Bowman (90–5162), Defendants–Appellants.**

Nos. 90–5159 to 90–5162.

United States Court of Appeals, Sixth Circuit.

Argued April 1, 1991.

Decided Oct. 29, 1991.

John K. Harber (argued and briefed), Pryor, Flynn, Priest & Harber, Knoxville, Tenn., for plaintiff-appellee.

Duane A. Peters, pro se.

W. Morris Kizer (briefed), Gentry, Tipton, Kizer & Little, Knoxville, Tenn., Stephen H. Galebach (argued and briefed), West & Galebach, Gaithersburg, Md., Jame G. Bruen, Jr. (of counsel), Washington, D.C., for defendants-appellants.

Before: KENNEDY and JONES, Circuit Judges; and FORESTER,* District Judge.

* The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

NATHANIEL R. JONES, Circuit Judge.

The district court below permanently enjoined the defendant abortion protestors from entering onto the business property of plaintiff Volunteer Medical Clinic based on its finding that the clinic had stated a valid cause of action under 42 U.S.C. § 1985(3) (1988). We disagree that a valid § 1985(3) claim has been alleged in this case. However, we find that Volunteer Medical Clinic has pled other causes of action which may support the injunction, and accordingly remand for further consideration of these claims.

## I.

The Volunteer Medical Clinic ("VMC") is a health care facility providing family planning services and abortions. On Saturday, February 4, 1989, the defendant-protestors and others conducted an anti-abortion demonstration on the business premises of the VMC. The protesters failed to heed requests by VMC employees to leave the premises, whereupon approximately eighty protesters were arrested and charged with criminal trespass by the Knoxville Police Department.

As a result of the demonstration, VMC filed suit in federal district court on March 1, 1989, seeking injunctive relief and damages. Plaintiff's complaint alleged that the purpose of the February 4 demonstration had been "to obstruct and close down the facilities of the plaintiff ... by trespassing on, sitting in, blockading, impeding, obstructing ingress into or egress from the plaintiff's facility, intimidating and harassing the plaintiff's patients, staging a disruptive protest, assaulting and battering the plaintiff's employees, and otherwise disrupting and interfering with the lawful operation of the plaintiff's business." J.App. at 22–23. The complaint alleged a conspiracy on the part of the defendants to violate the legal rights of women seeking abortion in violation of 42 U.S.C. § 1985(3). The complaint further alleged numerous tortious claims, including creation of a public nuisance, interference with VMC's lawful business, trespass, and intentional infliction of emotional harm. Finally, the complaint requested injunctive relief to insure that the defendants "do not infringe the plaintiff's constitutional, statutory, and common law rights to provide abortions and other family planning and medical services and to enjoy protection from tortious interference with its exercise of these rights." J.App. at 23.

On the same day the complaint was filed, the district court entered a temporary restraining order prohibiting the defendants from trespassing on VMC property or otherwise interfering with the operations of VMC.[1]

---

**1.** The full text of the temporary restraining order provided as follows:

Upon the request by the plaintiff for the immediate issuance of temporary injunctive relief from this Court, and based upon this Court's careful review of the plaintiff's verified Complaint and Memorandum of Law in support of the relief requested, this Court finds as follows:

1. The plaintiff has stated a valid cause of action pursuant to 42 U.S.C. § 1985(3). *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *United Bhd. of Carpenters and Joiners v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

2. From the alleged specific actions of the defendants and others acting in concert with them on or their behalf on and after February 4, 1989, it clearly appears to this Court that immediate and irreparable injury, loss, or damage will result to the plaintiff if the defendants and others acting in concert with them or on their behalf are not temporarily enjoined from further trespassing upon the plaintiff's business premises and interfering with the plaintiff's rights to provide abortions and other family planning services. Rule 65(b)(1), Federal Rules of Civil Procedure.

WHEREFORE, based on the foregoing, this Court finds that the immediate issuance of temporary injunctive relief is appropriate and, accordingly,

It is, therefore, ORDERED, ADJUDGED, and DECREED that a Temporary Restraining Order shall issue restraining and enjoining the defendants, and all other persons whomsoever, known or unknown, acting in their behalf or in concert with them, in any manner or by any means from:

a. Trespassing on, sitting in, blockading, impeding, or obstructing ingress into or egress from the plaintiff's business premises, including demonstrating within fifteen (15) feet of any person seeking access to or leaving the plaintiff's clinic at any time;

b. Physically abusing or tortuously harassing or interfering with the plaintiff's lawful business or persons entering or leaving, working at or

On March 14, 1989, the district court conducted a hearing to determine whether the temporary restraining order should be converted into a preliminary injunction pending trial. At the hearing, counsel for the defendants conceded that his clients were criminally trespassing on the day of the demonstration. The owner of the building and property occupied by VMC also testified that the defendants had no right to be on the property on February 4, 1989. Debra Walsh, the director of VMC, testified that the protestors "began to sit down, lay down, pile on top of one another, stand, push, and effectively blocked the entrance around me." J.App. at 176. Walsh also testified that, of the 48 patients scheduled for appointments on the day of the demonstration, only 18 actually received treatment. Walsh was also questioned about the protestors' response to police efforts to remove them:

Q. Did you witness the removal of these individuals?

A. Yes, I did.

Q. Were they cooperative with the police in the police's efforts to remove them from the property?

A. No, they were not.

Q. In what way were they not cooperative that you observed?

A. They went limp, they would not stand up and move when the police asked them to, they would not walk....

[A]fter the front door was cleared some of the people who had been blocking the back door ran around to make sure that they tried to block the front door and they were arrested in front of the building....

Q. Were you capable of opening the rear doors to your clinic?

A. No, we were not. The clinic staff tried to get all together at one door and push as hard as they could to get out and they could not open the door.

Q. Were you able to open the front door of your clinic?

A. No. The whole staff pushed on the front door trying to open it and we could not do it, too many people in front. We could not open it....

Q. What happened to you, physically, as you stood at the front door of your clinic?

A. I was pinched, hit, grabbed, kicked, and jammed against the door repeatedly.

J.App. at 178–79, 183, 187. Ms. Walsh testified that the attrition rate on February 4 "greatly" exceeded the normal no-show rate. The district court later declared Walsh to be "a credible witness and, as such, attache[d] great weight to her testimony." J.App. at 64.

On March 15, 1989, the district court entered a preliminary injunction pending resolution of defendants' motions to dismiss. The preliminary injunction mirrored the temporary restraining order in most respects, but deleted that language which prohibited demonstrations "within fifteen (15) feet of any person seeking access to or leaving the plaintiff's clinic at any time[.]" J.App. at 103; *see* text of temporary restraining order, *supra* note 1.

On March 18, 1989, the defendants staged another demonstration utilizing the same tactics employed at the February 4 protest. On March 20, VMC filed a petition for contempt citing as contemnors those defendants who had participated in both demonstrations. The district court subsequently permitted the VMC to amend its complaint to add additional party defendants, and to allege violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1988).

On April 6, 1989, the district court held a hearing on issues raised by the second demonstration. Walsh testified that 200 pickets appeared on the morning of March 18 and that copies of the injunction were

using any services at or upon the plaintiff's business premises;

c. Making any excessively loud sound which disturbs, injures, or endangers the health or safety of any patient or employee of the plaintiff;

d. Attempting or directing others to take any of the actions described hereinabove in subparagraphs a, b, and c.

handed to the protesters. She stated that "[t]hey laughed at me and tore [the injunctions] up." J.App. at 231. Most of the hearing was devoted to the testimony of attorney D. Vance Martin, who represented several defendants in the earlier hearing and who had been present at the March 18 protest. The district court found that Martin had violated the preliminary injunction by not discouraging the protest. Accordingly, Martin was fined $500.00, barred from practicing before the district court for one year, and assessed costs and attorney fees.

On May 19, 1989, the district court issued a Memorandum Opinion and Order resolving defendants' motions to dismiss. The court found that VMC had standing to assert the rights of its patients based on this court's holding in *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir.1987).

The district court then addressed VMC's claim under 42 U.S.C. § 1985(3). The court concluded that defendants' actions against women constituted a class-based animus, and that VMC had offered sufficient evidence that "the defendants have greatly interfered and hindered the local police authority's ability to secure equal access to medical treatment for women who choose abortion[,]" J.App. at 64, to establish the requisite state action under § 1985(3). The district court then dismissed VMC's claim based on the right to travel as VMC had failed to allege that any patient from outside Tennessee traveled to the clinic to receive an abortion. Finally, the district court found VMC's RICO claim to be exceedingly vague, and afforded VMC ten days to file an amended RICO claim. On June 1, 1989, VMC filed its amended civil RICO claim. J.App. at 68.

On May 30, 1989, the district court again heard testimony concerning the alleged contemptuous demonstration on March 18. Several of the demonstrators testified concerning their understanding of the district court's preliminary injunction. Based on the evidence presented, the district court issued a Memorandum Opinion on June 5, 1989, finding that the participants in the March 18 demonstration, although fully aware of the injunction's terms, had disrupted the functioning of VMC. The district court also found that VMC's business was "damaged by the acts of defendants and that an inordinate number of patients missed their appointments with plaintiff on that day." J.App. at 119. Two attorneys who participated in the March 18 demonstration were fined $500.00 each. The district court also assessed fines of $250.00 and $125.00 against thirty-four contemnors who were found to have had actual knowledge of the preliminary injunction.

On December 1, 1989, the district court issued a permanent injunction essentially reiterating the terms of the earlier injunction. The permanent injunction added a prohibition against entering either of VMC's parking lots, and contained a more detailed description of the physical property affected by the injunction. This timely appeal followed.

## II.

42 U.S.C. § 1985(3) provides in relevant part that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The Reconstruction-era Congress passed § 1985(3) in order to provide a cause of action against participants in private conspiracies to deprive others of legal rights. *Griffin v. Breckenridge*, 403 U.S. 88, 101, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). A plaintiff makes out a valid cause of action under § 1985(3) by demonstrating: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to either person or property or a deprivation of any right or privilege of a United States citizen. *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983); *Conklin v. Lovely*, 834 F.2d 543, 548 (6th Cir.1987).

The defendants on appeal raise a number of challenges, including: (1) whether VMC has standing to bring this action on the behalf of third parties; (2) whether VMC has proved the existence of class-based animus; and (3) whether VMC has proved the requisite state action. Because an injunction based upon § 1985(3) against abortion protestors who disrupt the activities of a private clinic offering abortion services appears to be an issue of first impression in this circuit, we deem it worthwhile to consider the validity of each of defendant's challenges in detail.

## A. *Standing*

We believe that the district court correctly ruled that this court's holding in *Planned Parenthood Ass'n v. City of Cincinnati*, 822 F.2d 1390 (6th Cir.1987), establishes VMC's right to assert standing on behalf of its patients. In *Planned Parenthood*, we considered whether a clinic providing abortion services had standing to challenge a local ordinance concerning the disposal of aborted fetuses. We held that *jus tertii* standing involves a two-part inquiry: first, whether the litigant's relationship with the third party whose right he seeks to assert is such that "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue," and second, whether the third party is not as well-situated to assert the allegedly affected right on his own behalf. *Id.* at 1394 (quoting *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1976)). After a careful analysis of Supreme Court precedent, we concluded that the rights of women seeking to exercise their Fourteenth Amendment right to an abortion were inextricably bound up with the services provided by the clinic, and that "women seeking to assert that right for themselves are faced with several obstacles." *Id.* at 1396.

We rested our analysis in *Planned Parenthood* largely on *Singleton v. Wulff*, 428 U.S. 106, 118, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976), where the Supreme Court held that, given the nature of the right involved, "it generally is appropriate to allow a physician to assert the rights of women patients as against governmental interference with the abortion decision." *Accord Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739, 745, 35 L.Ed.2d 201 (1973) (physician has standing to challenge abortion statute due to "sufficiently direct threat of personal detriment"). The fact that *Planned Parenthood* involved state interference with the abortion decision, while the interference at issue here occurred at the hands of private actors, does not in any way loosen the nexus between the interests of the clinic and those of the women on whose behalf this suit is brought. We therefore hold that VMC has standing to bring the present action against defendants under § 1985(3).

## B. *Class-based animus*

The defendants next argue that VMC has failed to prove the class-based animus necessary to bring a § 1985(3) action. *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970), established that a necessary element of § 1985(3) claim is the existence of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action". The Supreme Court has explicitly left open whether § 1985(3) reaches conduct other than that motivated

by racial animus. *See United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 835, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983).

■ Whether women are a protected class under § 1985(3) appears to be an issue of first impression in this circuit. Nevertheless, we have previously had occasion to consider whether the protections of § 1985(3) extend beyond the realm of purely racial animus, and have held unequivocally that it does. *See, e.g., Conklin v. Lovely*, 834 F.2d 543, 549–50 (6th Cir.1987) (holding that § 1985(3) extends to animus directed against political views); *Glasson v. City of Louisville*, 518 F.2d 899, 911–12 (6th Cir.) (same) *cert. denied*, 423 U.S. 930, 96 S.Ct. 280, 46 L.Ed.2d 258 (1975); *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1973) (same). More importantly, this court has interpreted § 1985(3) to hold that "the class of individuals protected by the 'equal protection of the laws' language of [§ 1985(3) ] are those so-called 'discrete and insular' minorities that receive special protection under the Equal Protection Clause because of inherent personal characteristics." *Browder v. Tipton*, 630 F.2d 1149, 1150 (6th Cir.1980). Significantly, we announced our holding in *Browder* in light of the Supreme Court's decision in *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), extending the ambit of the Equal Protection Clauses of the Fifth and Fourteenth Amendments to sex-based discrimination. *Id.* at 687, 93 S.Ct. at 1770. Finally, *Browder* noted without deciding that § 1985(3) "may well protect" groups suffering from gender-based discrimination. *Browder*, 630 F.2d at 1154 & n. 15; *see also Johnson v. City of Cincinnati*, 450 F.2d 796 (6th Cir.1971) (assuming without discussion that sex discrimination is actionable under § 1985(3)).

In light of this court's precedent, we find the conclusion inescapable that women constitute a cognizable class under § 1985(3). Gender is precisely the type of "immutable characteristic" that has consistently been held an improper basis upon which to differentiate individuals in the allocation of rights. Sex discrimination, whether overt or invidious, offends the fundamental notion that our nation's legal protections extend equally to all citizens and is repugnant to the values of civil rights and liberties upon which our Constitution rests. The majority of circuit courts to confront this issue have agreed and, accordingly, have found gender discrimination actionable under § 1985(3). *See, e.g., NOW v. Operation Rescue*, 914 F.2d 582, 585 (4th Cir. 1990), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 111 S.Ct. 1070, 112 L.Ed.2d 1176 (1991); *New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1359 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1989); *Volk v. Coler*, 845 F.2d 1422, 1434 (7th Cir.1988); *Long v. Laramie County Community College Dist.*, 840 F.2d 743, 751–53 (10th Cir.), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 50 (1988); *Stathos v. Bowden*, 728 F.2d 15, 20 (1st Cir.1984); *Mayer v. Wedgewood Neighborhood Coalition*, 707 F.2d 1020, 1022 (9th Cir.1983); *Carchman v. Korman Corp.*, 594 F.2d 354, 356 (3d Cir.), *cert. denied*, 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). *Cf. McLean v. International Harvester Co.*, 817 F.2d 1214, 1219 (5th Cir.1987) (§ 1985(3) covers classes characterized by "some inherited or immutable characteristic"). We now join the majority of circuits in holding that § 1985(3) encompasses gender-based animus.

Defendants nevertheless seek to circumvent the strictures of § 1985(3) by portraying their demonstrations as directed not against women as a class, but rather against that sub-class of women who seek abortions. We find defendants' strained distinction wholly unpersuasive. One of the primary purposes of § 1985(3), like that of the Equal Protection Clause, is not simply to accord an intangible, abstract protection to the targeted class, but to protect members of the class in the concrete exercise of their individual rights. The fact that only women who "choose" to become pregnant (no doubt a dubious characterization in many cases) may actively exercise the right to an abortion free from governmental interference in no way en-

tails that the class is undeserving of § 1985(3) protection. A statute that disenfranchised African Americans would be no less a deprivation of equal protection of the laws simply because it was intended to affect only that class of African Americans who wish to vote. Virtually any conduct that violates equal protection under § 1985(3) can be characterized as impacting only those members of the class seeking to *exercise* the predicate statutory or constitutional right. The Supreme Court has clearly held, however, that the defendant's conduct need not affect every member of the class to make out a § 1985(3) violation. *See Griffin,* 403 U.S. 88, 103, 91 S.Ct. 1790, 1799 (upholding claim against defendants whose animus was directed against blacks supporting civil rights efforts). To the extent that the defendant's conduct limits the ability of women to secure an abortion, it trenches upon the rights of all women. We conclude with the following elegant discussion of this issue by the Second Circuit in *Terry:*

> It is sophistry for defendants to claim a lack of class-based animus because their actions are directed only against those members of a class who choose to exercise particular rights, but not against class members whose actions do not offend them. The denial of ill-will towards the women they target and the claim that defendants' actions will benefit these women amount to an argument that 'we are doing this for your own good'; a contention that usually shields one's actual motive.
>
> Defendants cannot seriously urge that they do not intentionally infringe on the right of women to seek access to the clinics. That was one of the major objectives of the demonstrations ... all of which were purposefully aimed to deny the right of women as a class to gain access to clinics.

*Terry,* 886 F.2d at 1360: *accord Roe v. Operation Rescue,* 710 F.Supp. 577, 581 (E.D.Pa.1989), *aff'd on other grounds,* 919 F.2d 857 (3d Cir.1990). We therefore hold that VMC has shown sufficient evidence of class-based animus to bring an action under § 1985(3).

## C. *State action*

■ It is beyond dispute that § 1985(3) provides a remedy for conspiracies involving private actors to deprive persons of their constitutional rights. *See, e.g., Griffin v. Breckenridge,* 403 U.S. 88, 96–98, 91 S.Ct. 1790, 1795–96, 29 L.Ed.2d 338 (1971). Moreover, the Supreme Court has consistently held that claims under § 1985(3), unlike those under 42 U.S.C. § 1983, need not allege that the deprivation occurred at the hands of the state. *Id.* at 99, 91 S.Ct. at 1797; *United Bhd. of Carpenters & Joiners v. Scott,* 463 U.S. 825, 832, 103 S.Ct. 3352, 3358, 77 L.Ed.2d 1049 (1983). The *Griffin* Court concluded that a proper reading of the statute foreclosed a state action requirement analogous to that required under § 1983 or the Fourteenth Amendment:

> [I]t is hard to see how the conspiracy aspect [of § 1985(3) ] ... could be read to require the involvement of state officers.
>
> ... [T]here is nothing inherent in the phrase ["equal protection" as utilized in § 1985(3) ] that requires the action working the deprivation to come from the State. *See e.g., United States v. Harris,* 106 U.S. 629, 643 [27 L.Ed. 290 (1883) ]. Indeed, the failure to mention any such requisite can be viewed as an important indication of congressional intent to speak in § 1985(3) of *all* deprivations of 'equal protection of the laws' and 'equal privileges and immunities under the laws,' whatever their source.

*Griffin,* 403 U.S. at 96–97, 91 S.Ct. at 1795–96. *Accord Macko v. Bryon,* 641 F.2d 447, 450 (6th Cir.1981) (no state action requirement under § 1985(3)); *Smith v. Martin,* 542 F.2d 688, 690 (6th Cir.1976) (same), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 388 (1977). The Supreme Court affirmed the continuing validity of *Griffin's* reading of § 1985(3) in *Scott,* in which the Court held that § 1985(3) is broad enough to reach even "purely private conspiracies." *Id.,* 463 U.S. at 832, 103 S.Ct. at 3358. Thus, the fact that defendants are private actors in and of itself in no way immunizes their conduct from the reach of § 1985(3).

Still, the Supreme Court has consistently interpreted § 1985(3) as a purely remedial rather than substantive statute; its aim is to provide an effective remedy for private conspiracies that violate otherwise existing rights. As the *Scott* Court clarified, § 1985(3) " 'provides no substantive rights itself' to the class conspired against. The rights, privileges, and immunities that § 1985(3) vindicates must be found elsewhere...." *Scott*, 463 U.S. at 832, 103 S.Ct. at 3358 (citation omitted) (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979)). Thus, in *Griffin*, the Court upheld a claim under § 1985(3) brought by several black civil rights workers who contended that three private actors who brutally beat them violated their rights under the Thirteenth Amendment and their right to travel guaranteed by the Constitution. The Court pointed out, however, that the right to travel, like the rights guaranteed by the Thirteenth Amendment, were "assertable against private as well as governmental interference." *Griffin*, 403 U.S. at 105, 91 S.Ct. at 1800. In *Scott*, by comparison, the Court made clear that where a conspiracy is alleged to violate a right that is by definition a right only against state interference, such as the rights secured under the First and Fourteenth Amendments, the complainant must first show "that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *Scott*, 463 U.S. at 830, 103 S.Ct. at 3357. Thus, the *Scott* Court concluded that the plaintiffs in that case could not make out a § 1985(3) claim predicated upon a violation of the plaintiff's First Amendment rights absent a showing of state involvement: "[H]ere the right claimed to have been infringed has its source in the First Amendment. Because that Amendment restrains only official conduct, to make out their § 1985(3) case, it was necessary for respondents to prove that the State was somehow involved in or affected by the conspiracy." *Id.* at 833, 103 S.Ct. at 3358.

In sum, to fall within the remedial purview of § 1985(3), a plaintiff must allege that he has suffered the violation of a right. Whether this requires a showing of state action will turn on the nature of the predicate right: if the right exists as against all actors, private as well as state, then no showing of state action is required. If, on the other hand, the violation alleged is of a right protected only against state interference, such as the rights guaranteed under the Fourteenth Amendment, then the corresponding level of state action must be proven.[2]

Numerous lower courts have, consistent with the above analysis, upheld claims brought by clinics offering abortion services against abortion protestors absent a showing of state action where the violation alleged was of the right to travel, which is constitutionally protected against private as well as public encroachment. *See, e.g., New York State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1360–61 (2d Cir.1989); *NOW v. Operation Rescue*, 726 F.Supp. 1483, 1493 (E.D.Va.1989), *aff'd*, 914 F.2d 582, 584 (4th Cir.1990), *cert. granted sub nom. Bray v. Alexandria Women's Health Clinic*, —— U.S. ——, 111 S.Ct. 2006, 114 L.Ed.2d 95 (1991); *Roe v. Operation Rescue*, 710 F.Supp. 577, 581–82 (E.D.Pa.1989), *aff'd on other grounds*, 919 F.2d 857 (3d Cir.1990).

In the instant case, the district court found that VMC had made "no allegation in its complaint that any of its patients travel from outside of Tennessee to receive an abortion," and therefore properly dismissed VMC's claim based on the right to travel. J.App. at 64–65. The court did find, however, that the defendants had "greatly interfered and hindered the local police authority's ability to secure equal access to medical treatment for women who choose abortion[,]" and on that basis concluded that VMC had pled the necessary state action to show a violation of the right to

---

**2.** It naturally follows from the above analysis that once a plaintiff has proven a predicate violation, no further showing of state action is necessary to fall within the ambit of § 1985(3), regardless of whether the predicate right requires state action or not.

abortion as protected by the Fourteenth Amendment. J.App. at 64. All parties to the present action agree that the right to abortion is a constitutionally protected right deriving from the Fourteenth Amendment. *See Hodgson v. Minnesota,* — U.S. —, 110 S.Ct. 2926, 2936, 111 L.Ed.2d 344 (1990) ("A woman's decision to beget or to bear a child is a component of her liberty that is protected by the Due Process Clause of the Fourteenth Amendment to the Constitution.").

Supreme Court precedent analyzing the state action requirement of the Fourteenth Amendment clarify that the conduct alleged to have caused the deprivation must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 2753, 73 L.Ed.2d 482 (1982); *Rendell–Baker v. Kohn,* 457 U.S. 830, 838, 102 S.Ct. 2764, 2769, 73 L.Ed.2d 418 (1982). *Lugar* held that the issue of "fair attribution" involves a two-part inquiry:

> First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible.... Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State.

*Lugar,* 457 U.S. at 937, 102 S.Ct. at 2754. With respect to the first requirement, the question is whether the admittedly discriminatory policy could in any way be ascribed to any governmental decision or "whether the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority." *Lugar,* 457 U.S. at 938–39, 102 S.Ct. at 2754–55. The second requirement is met where the defendants may properly be characterized as "state actors." *Id.* at 939, 102 S.Ct. at 2755.

Our decisions in the area of state action have tracked closely the language of the Court, and have held that a claimant has a cause of action under the Fourteenth Amendment only where she can show a sufficiently close nexus between the state and private defendants such that the defendant may be deemed a state actor. *See, e.g., Wagner v. Metropolitan Nashville Airport Auth.,* 772 F.2d 227, 229–30 (6th Cir.1985).

After careful review of VMC's complaint, we find that the level of state action necessary to make out a viable claim under the Fourteenth Amendment has not been alleged. The only allegation in VMC's complaint that might be construed as supporting a finding of state involvement is that "the Knoxville Police Department was required to arrest virtually every defendant named herein, charge virtually every defendant with the offense of criminal trespass, and physically remove the defendants from the plaintiff's business premises." J.App. at 26. Although presumably the intent of the defendant's actions was, at least in part, to overwhelm the ability of the police to protect the ability of patients to enter the clinic, this fact alone is insufficient to show a nexus between the state and the defendants, nor does it suggest joint or concerted action between the defendants and the police. The protestors were neither acting under state authority, nor was the state in any sense "responsible" for their conduct at the clinic. Nor do we find any basis in the above allegation for charging the defendant's actions to the state. Accordingly, we hold that the district court erred in its conclusion that the fact that the defendants "interfered and hindered the local police authority's ability to secure equal access to medical treatment for women who choose abortion" was in itself sufficient to support a finding of state action.

Similarly, the assertion that the unlawful acts of the defendants somehow bore the imprimatur of the state cannot find support in our or Supreme Court precedent. *See, e.g., Lugar,* 457 U.S. at 940, 102 S.Ct. at 2755 (allegation of unlawful activity by private actor insufficient to support claim of state action under the Fourteenth Amendment). The fact that the local police force acted to prevent the defendants from vio-

lating state trespass laws does not "involve" the state in the unlawful conduct for Fourteenth Amendment purposes.

We are not unmindful of the fact that at least two district courts have upheld a claim under § 1985(3) predicated upon the right to an abortion under the Fourteenth Amendment. *See New York State Nat'l Org. for Women v. Terry*, 704 F.Supp. 1247, 1260–61 (S.D.N.Y.), *aff'd as modified*, 886 F.2d 1339, 1364 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990); *Women's Health Care Services v. Operation Rescue*, 773 F.Supp. 258 (D.Kan.1991). Without passing on either court's legal analysis, we simply note that the evidence in both cases suggested a level of state involvement not present in the instant case. In *Terry*, police officers had cooperated in the alleged conspiracy by agreeing not to arrest the abortion protestors for a certain period of time. *Terry*, 704 F.Supp. at 1260 n. 16. Similarly, in *Health Care Services*, the court indicated that police officers might have displayed an improper lack of zeal in defending the legal rights of plaintiffs and their patients. *Health Care Services*, 773 F.Supp. at ——. Whether we would find sufficient state action for Fourteenth Amendment purposes if presented with similar facts is an issue not presently before this panel. We therefore leave resolution of that issue for another day.

For the foregoing reasons, we find that VMC has failed to show the requisite level of state action to make out a violation of the Fourteenth Amendment, and accordingly that its § 1985(3) claim predicated upon the right to an abortion free from governmental interference must likewise fail.

### III.

Although we conclude that the district court's injunction cannot stand on a § 1985(3) claim predicated on the Fourteenth Amendment, we remand the present action to the district court for consideration of whether one of VMC's other claims might support the injunction issued here.

First, VMC alleged in its complaint that the defendants' acts supported a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1988). The district court found the RICO complaint too vague and ambiguous, and ordered VMC to amend its RICO claims within ten days, which VMC did. J.App. at 65–66, 68–73. The court, however, failed to reach the RICO claim, as it found the § 1985(3) claim dispositive. Although we offer no opinion on the validity of VMC's RICO claim, we note that at least one court has upheld a civil RICO claim under similar circumstances. *See Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1348–50 (3rd Cir. 1989), *cert. denied*, 493 U.S. 901, 110 S.Ct. 261, 107 L.Ed.2d 210 (1989). We believe it would be inappropriate at this stage of the proceedings for this court to rule on VMC's RICO claim, and therefore remand for further proceedings.

Second, VMC presents a number of state law claims which might support the injunctive relief imposed, including violation of state law on trespass, public nuisance, and tortious interference with business. We believe further consideration of these claims is also warranted, and may support the injunction issued here. *See Roe v. Operation Rescue*, 919 F.2d 857, 867 (3d Cir. 1990) (where injunction issued on state and federal law grounds, injunction may stand on state law grounds regardless of validity of federal ground). We leave the decision whether to consider the state law claims to the sound discretion of the district court. *See generally Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1009 (6th Cir.1987) (pendant jurisdiction turns on whether federal claim is substantial, whether federal and state claims derive from common nucleus of operative fact, whether claims normally expected to be tried together, and whether exercise of jurisdiction would promote judicial economy, fairness, and convenience).

Accordingly, we remand the present action to the district court to determine whether VMC's state law and civil RICO claims might support the permanent injunction issued here.

IV.

For the reasons set forth above, we REVERSE the district court's finding that VMC alleged a valid cause of action under § 1985(3), and REMAND for further consideration of VMC's RICO and state law claims.

KENNEDY, Circuit Judge, concurring.

I concur in parts I, IIA., IIC., III and IV of Judge Jones' opinion. Since there is no state action here to support a 42 U.S.C. § 1985(3) claim, I find it unnecessary to address the issues raised in part IIB.